## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No.**

**TCA GLOBAL CREDIT MASTER FUND, L.P.,**
**a Cayman Islands limited partnership,**

**Plaintiff,**

**vs.**

**MILLENNIUM HEALTHCARE INC.,**
**a Delaware corporation,**
**MILLENNIUM PROCOMM SOLUTIONS INC.,**
**a New York corporation;**
**MILLENNIUM CODING & BILLING INC.,**
**a New York corporation;**
**MILLENNIUM MEDICAL DEVICES LLC,**
**a New York limited liability company;**
**MILLENNIUM VASCULAR MANAGEMENT GROUP INC.,**
**a New York corporation;  and**
**MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC,**
**a New York limited liability company.**

**Defendants.**

_____/

## COMPLAINT

Plaintiff, **TCA GLOBAL CREDIT MASTER FUND, L.P.,** a Cayman Islands limited

partnership,  (**"TCA FUND"** or  the **"Plaintiff"**), by and through its undersigned counsel, hereby

sues Defendants **MILLENNIUM HEALTHCARE INC. ("MILLENNIUM"),** a Delaware

corporation; **MILLENNIUM PROCOMM SOLUTIONS INC.,** a New York corporation;

**MILLENNIUM CODING & BILLING INC.,** a New York corporation; **MILLENNIUM**

**MEDICAL DEVICES LLC**, a New York limited liability company; **MILLENNIUM**

**VASCULAR MANAGEMENT GROUP INC.,** a New York corporation; and **MILLENNIUM**

**VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC,** a New York limited liability company, and alleges:

## NATURE OF THE ACTION

1.      **TCA FUND** brings the instant action to recover **$420,509.81** plus Default Interest, costs, and reasonable attorneys' fees, owing and due to the **TCA FUND** as of October 21, 2013, pursuant to the terms of the Securities Purchase Agreement executed by **MILLENNIUM**, the secured convertible Promissory Note, and the other transaction documents governing the parties' obligations and duties (collectively the "Transaction Documents").  Plaintiff also seeks to enforce guaranties issued by **MILLENNIUM's** wholly owned subsidiaries **MILLENNIUM PROCOMM SOLUTIONS INC., MILLENNIUM CODING & BILLING INC., MILLENNIUM MEDICAL DEVICES LLC**, **MILLENNIUM VASCULAR MANAGEMENT GROUP INC.,** and **MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC**, (collectively **"GUARANTOR SUBSIDIARIES"**) pursuant to which they contracted to be jointly and severally liable for **MILLENNIUM's** debts to **TCA FUND**.  **TCA FUND** also brings this action to foreclose on its first-priority security rights in collateral pledged by **MILLENNIUM** and by its **GUARANTOR SUBSIDIARIES**, each, respectively.

## JURISDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1332(a)(2), this is a civil action in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between Plaintiff **TCA FUND**, a citizen of a foreign state (the Cayman Islands),   on the one hand, and the

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

Defendants, **MILLENNIUM**, a citizen of a State (Delaware), and its **GUARANTOR SUBSIDIARIES**, each a citizen of a State (New York), on the other.

3.    At all relevant times, **TCA FUND** was formed in the Cayman Islands, a foreign state, is *sui juris,* and maintained its principal place of business in the Cayman Islands. Plaintiff **TCA FUND** is, therefore, a citizen of a foreign state within the meaning of 28 U.S.C. § 1332(a)(2). Plaintiff **TCA FUND** is obligated to pay its attorneys a reasonable fee for the attorneys' services. **TCA FUND** is managed by Trafalgar Capital Advisors, Inc. d/b/a TCA Fund Management Group which itself maintains offices in London, Sydney, and also in Hollywood, Florida.

4.    At all relevant times, Defendant **MILLENNIUM** was a citizen of the State of Delaware with its principal place of business in New York.

5.    At all relevant times, Defendant **MILLENNIUM PROCOMM SOLUTIONS INC.** was a citizen of the state of New York with its principal place of business in New York.

6.    At all relevant times, Defendant **MILLENNIUM CODING & BILLING INC.** was a citizen of the state of New York with its principal place of business in New York.

7.    At all relevant times, Defendant **MILLENNIUM MEDICAL DEVICES LLC** was a citizen of the state of New York with its principal place of business in New York.

8.    At all relevant times, Defendant **MILLENNIUM VASCULAR MANAGEMENT GROUP INC.** was a citizen of the state of New York with its principal place of business in New York.

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

9.      At all relevant times, Defendant **MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC** was a citizen of the state of New York with its principal place of business in New York.

10.      This Court has personal jurisdiction over Defendant **MILLENNIUM** pursuant to Florida's long-arm statute based upon its breach of contract by "failing to perform acts required by the contract to be performed in this state," Fla. Stat. § 48.193(1)(a)(7).  The Transaction Documents required **MILLENNIUM** to regularly perform certain obligations in the State of Florida, such as furnishing certain financial documents on a monthly basis to **TCA FUND** in Hollywood, Florida. *See, e.g.*, Securities Purchase Agreement, a copy of which is attached hereto and incorporated by reference as **Exhibit 1,** at  §§ 7.2(h);  7.3; 11.1.   **MILLENNIUM** failed to timely provide the required information.

11.      The Court has personal jurisdiction over **MILLENNIUM** and its **GUARANTOR SUBSIDIARIES** pursuant to the Security Agreements executed by each, according to which each "Company hereby irrevocably accepts and submits to the jurisdiction" of any court which **TCA FUND** elected to bring suit.  *See* Millennium Security Agreement, dated August 31, 2012, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 2**; Guarantor Subsidiaries Security Agreement**,** dated August 31, 2012, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 3**.  Further,  **MILLENNIUM** and its **GUARANTOR SUBSIDIARIES** have sufficient minimum contacts with the State of Florida, the forum State, to satisfy the Due Process Clause of the Fourteenth Amendment to the United States Constitution so

that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

12.    Venue is proper in this district because certain of the acts complained of herein occurred in this district and because each of the Defendants is subject to personal jurisdiction in this district pursuant to 28 U.S.C.A. § 1391.

13.    **MILLENNIUM** expressly waived personal service of process and has agreed that service of process may be effected by certified mail, return receipt requested.

## PARTIES

14.    **MILLENNIUM HEALTHCARE INC.** is a medical device and healthcare support and services company that purchases, supplies, and distributes medical devices and equipment, provides physician practice development, and administration services for physician facilities, and offers support and services in medical procedure billing, collections, medical procedure coding, call and message management, and emergency dispatch.   Dominick Sartorio is the CEO of **MILLENNIUM** and it is a Delaware corporation with its principal place of business at 400 Garden City Plaza, Suite 440, Garden City, NY 11530.  **MILLENNIUM's** registered agent for purposes of service in Delaware is United Corporate Services, Inc., 874 Walker Road, Suite G, Dover, Delaware 19904.  **MILLENNIUM** is *sui juris*.

15.    **MILLENNIUM PROCOMM SOLUTIONS INC.** is a wholly owned subsidiary of **MILLENNIUM**.  It is a New York corporation with its principal place of business at 6901 Jericho Turnpike, Suite 101, Syosset, New York, 11791.  **MILLENNIUM PROCOMM SOLUTIONS, INC.** is *sui juris*.

5

16.     **MILLENNIUM CODING & BILLING INC.** is a wholly owned subsidiary of **MILLENNIUM**. It is a New York corporation with its principal place of business at 6901 Jericho Turnpike, Suite 101, Syosset, New York, 11791. **MILLENNIUM CODING & BILLING INC.** is *sui juris*.

17.     **MILLENNIUM MEDICAL DEVICES LLC** is a wholly owned subsidiary of **MILLENNIUM**. It is a New York limited liability corporation with its designated agent located at Corporate Service Bureau, Inc., 283 Washington Avenue, Albany, New York, 12206. **MILLENNIUM MEDICAL DEVICES LLC** is *sui juris*.

18.     **MILLENNIUM VASCULAR MANAGEMENT GROUP INC.** is a wholly owned subsidiary of **MILLENNIUM**. It is a New York corporation with its principal place of business at 6901 Jericho Turnpike, Suite 101, Syosset, New York, 11791. **MILLENNIUM VASCULAR MANAGEMENT GROUP INC.** is *sui juris*.

19.     **MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC,** is a wholly owned subsidiary of **MILLENNIUM**. It is a New York limited liability corporation with its designated agent located at 6901 Jericho Turnpike, Suite 101, Syosset, New York, 11791. **MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC** is *sui juris*.

20.     All conditions precedent to commencing this action have occurred, been satisfied, or have been waived.

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

### GENERAL ALLEGATIONS

21.    In 2012, **TCA FUND** purchased from **MILLENNIUM** a secured, convertible Promissory Note in the amount of $375,000.00 with a maturity date of September 24, 2013 (the "Note"), a copy of which is attached hereto and incorporated herein by reference as **Exhibit 4**.  In addition to its maturity date, when all sums outstanding under the Note were due, the Note also obligated **MILLENNIUM** to make a series of monthly payments.

22.    As an inducement for **TCA FUND** to purchase the Note, **MILLENNIUM's** wholly owned subsidiaries each executed an absolute and unconditional guaranty agreement on September 20, 2012 ("Guaranty Agreement"),  a copy of which is attached hereto and incorporated herein by reference as **Exhibit 5**.  As security for its obligation, **MILLENNIUM** and its **GUARANTOR SUBSIDIARIES** each and all granted **TCA FUND** a first-priority security interest in all of their existing or future assets,   copies of which are attached hereto and incorporated herein by reference as **Exhibit 2** (Millennium Security Agreement) and **Exhibit 3** (Guarantor Subsidiaries Security Agreement), which **TCA FUND** perfected through the filing of a UCC-1 financing statement with the State of Delaware under filing No. 2012 3677681,  a copy of which is attached hereto and incorporated herein by reference as **Exhibit 6**, and with the State of New York under filing No. 201209250545455,  a copy of which is attached hereto and incorporated herein by reference as **Exhibit 7**.

23.    According to the terms of the Note, **MILLENNIUM** was obligated to make monthly installment payments against the principal and interest accumulating on the Note.  *See* Note, a copy of which is attached hereto and incorporated by reference as **Exhibit 4**, at § 1.1(b) and Exhibit A to

the Note.  However, **MILLENNIUM** failed to make two monthly payments and on March 21, 2013,

**TCA FUND** formally notified **MILLENNIUM** (and its **GUARANTOR SUBSIDIARIES)** that it

had triggered an Event of Default.  *See* March 21, 2013 Correspondence from TCA FUND, a copy

of which is attached hereto and incorporated herein by reference as **Exhibit 8**.  By this same

correspondence, **TCA FUND** accelerated the outstanding principal balance and declared due all

sums, including interest, calculated at the Default Rate of 18%.  *See id*.

24.     Notwithstanding **TCA FUND's** efforts to allow **MILLENNIUM** to satisfy its

obligations, **MILLENNIUM** remained in default and, on October 21, 2013, **TCA FUND** declared

its obligations to **MILLENNIUM**  terminated and again made demand for payment upon

**MILLENNIUM** and its **GUARANTOR SUBSIDIARIES**.  *See* October 21, 2013 Correspondence

from Carl Schoeppl, Esq., a copy of which is attached hereto and incorporated herein by reference

as **Exhibit 9**.

25.     **MILLENNIUM'S** failure to pay constituted a breach of its obligations under the

Note.  *See* Note, a copy of which is attached hereto and incorporated by reference as **Exhibit 4** at §

6(a) (defining Event of Default to include failure "to pay any installment of interest principal or other

sums due under this Note or any other Transaction Document within three (3) Business Days of

when any such payment shall be due and payable.")    **MILLENNIUM'S** failure to pay also

constituted a breach of its obligations under the Millennium Security Agreement.  *See* Millennium

Security Agreement, a copy of which is attached hereto and incorporated herein by reference as

**Exhibit 2**, at § 4(a) (defining Event of Default to include failure "of Company to pay any sum due

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

under or as part of the Obligations as and when due and payable (whether by acceleration, declaration, extension or otherwise.)")

26.     The **GUARANTOR SUBSIDIARIES** breached their guaranty to **TCA FUND** by failing to satisfy **MILLENNIUM's** obligations to **TCA FUND** upon **MILLENNIUM's** non-performance.  *See* Guaranty Agreement,  a copy of which is attached hereto and incorporated herein by reference as **Exhibit 5**, at § 7.1.  The **GUARANTOR SUBSIDIARIES'** breach of the Guaranty Agreement also constituted a breach of the Guarantor Subsidiaries Security Agreement.  *See* Guarantor Subsidiaries Security Agreement,  a copy of which is attached hereto and incorporated herein by reference as **Exhibit  3**, at § 4(a) (defining Event of Default to include "failure of Company to pay any sum due under or as part of the Obligations as and when due and payable (whether by acceleration, declaration, extension or otherwise.)")

27.     **MILLENNIUM** has failed to cure its default and remains in default under the terms of the Note and the Millennium Security Agreement.  The **GUARANTOR SUBSIDIARIES** have failed to cure their default and remain in default under the terms of the Guaranty and the Guarantor Subsidiaries Security Agreement.   **TCA Fund** has been injured thereby.

<u>**COUNT I -**</u>
<u>**FOR AMOUNT DUE ON PROMISSORY NOTE**</u>
<u>**DATED 8/31/12 EFFECTIVE 9/24/12**</u>
**(Against Millennium Healthcare Inc.)**

28.     Plaintiff **TCA FUND** realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 27 as if fully set forth herein.

29.     On or about August 31, 2012, **MILLENNIUM** sold and issued to **TCA FUND** a secured convertible Promissory Note (the "Note") with an effective date of September 24, 2012, and a maturity date of September 24, 2013, for $375,000.00.  A true and correct copy of the Note is attached hereto as **Exhibit 4**.

30.     Dominick Sartorio executed the Note in his capacity as Chief Executive Officer on behalf of **MILLENNIUM**.   *See* Note, a copy of which is attached hereto and incorporated by reference as **Exhibit 4**, at 15.

31.     The Note is "an unconditional promise . . . to pay a fixed amount of money, with . . . interest . . .[and] other charges described in the promise," and it is a) payable "to order at the time it is issued," NEV.REV.STAT. § 104.3104(1),  *i.e.*, it "is payable to the identified person," NEV.REV.STAT. § 104.3109(2), b) is payable at a definite time, and c) requires no additional undertaking by the person promising to do any act in addition to the payment of money, other than acts to "give, maintain, or protect collateral to secure payment," and other than  "an authorization or power to the holder to confess judgment or realize on or dispose of collateral," and other than waivers "of the benefit of" laws "intended for the advantage or protection of an obligor."  *See* NEV.REV.STAT. § 104.3104 ("Negotiable Instrument").

32.     Specifically, under the terms of the Note, **MILLENNIUM** promised "to pay to the order of TCA Global Credit Master Fund, LP, a Cayman Islands limited partnership located at 1404 Rodman Street, Hollywood, FL 33020, and its successors or assigns (the 'Holder'), the principal amount of Three Hundred Seventy-Five Thousand and 00/100 United States Dollars (US$375,000.00) on or prior to September 24, 2013 (the 'Maturity Date'), and to pay interest on the

unpaid principal balance hereof at the rate of twelve percent (12%) per annum (the 'Applicable Rate') commencing as of the date the proceeds hereunder are funded to the Company." *See* Note, a copy of which is attached hereto and incorporated by reference as **Exhibit 4**, at 1. Exhibit A to the Note further set forth a schedule of monthly payments that **MILLENNIUM** was obligated to make.

33.     The Note is thus a Negotiable Instrument under Nevada law. *See* NEV.REV.STAT. § 104.3104.3

34.     **TCA FUND** is the owner of the Note, in possession of the original Note, and is entitled to enforce the Note. *See* NEV.REV.STAT. § 104.3104.3  **TCA FUND** is therefore the holder of the Note. *Id.*

35.     **MILLENNIUM** defaulted on the terms of the Note by failing to make two monthly payments as called for by the Note. *See* Note, a copy of which is attached hereto and incorporated by reference as **Exhibit 4**, at § 1(b) and Exhibit A. *See also* NEV.REV.STAT. § 104.3304.2

36.     On March 21, 2013, **TCA FUND** formally notified **MILLENNIUM** and its **GUARANTOR SUBSIDIARIES** that it had triggered an Event of Default. *See* March 21, 2013 Correspondence from TCA FUND, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 8**. By this same correspondence, **TCA FUND** accelerated the outstanding principal balance and declared due all sums, including interest, calculated at the Default Rate of 18%. *See id*. *See also* NEV.REV.STAT. § 104.3304.2.

37.     On October 21, 2013, **TCA FUND** declared its obligations to **MILLENNIUM** terminated and again made demand upon **MILLENNIUM** and its **GUARANTOR SUBSIDIARIES** for the then outstanding total of **$420,509.81**. *See* October 21, 2013 Correspondence from Carl

Schoeppl, Esq., a copy of which is attached hereto and incorporated herein by reference as **Exhibit 9**.

38.      **MILLENNIUM's** failure to pay constituted a breach of its obligations under the Note.  *See* Note, **Exhibit 4** at § 6(a) (defining Event of Default to include failure "to pay any installment of interest principal or other sums due under this Note or any other Transaction Document within three (3) Business Days of when any such payment shall be due and payable.)

39.      Under the terms of the Note, **TCA FUND** is entitled to principal, interest at the Default Rate of 18%, reasonable attorneys' fees and costs, all of which are due now and payable. *See* Note, **Exhibit 4** at §§ 6(b) (providing for recovery of outstanding principal balance, all accrued and unpaid interest, interest at the Default Rate, reasonable attorneys' fees, paralegals' fees, costs and expenses incurred in collection, and all other sums due); 1(c) (providing for interest at the default rate of 18%).

**WHEREFORE**, Plaintiff **TCA FUND** respectfully requests that this Court enter a judgment in favor of Plaintiff **TCA FUND** and against Defendant **MILLENNIUM HEALTHCARE INC.** and which:

A.      Orders that Defendant **MILLENNIUM HEALTHCARE INC.** shall pay compensatory damages in an amount of **$375,000.00** in accordance with the proof adduced;

B.      Orders that Defendant **MILLENNIUM HEALTHCARE INC.** shall pay pre-judgment interest on such compensatory damages at a default rate of interest of 18% pursuant to NEV.REV.STAT. § 99.050 and pursuant to the Note, **Exhibit 4** at §§ 6(b), 1(c), and post-judgment interest at the highest legal rate under Nevada state law;

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

C.    Orders that Defendant **MILLENNIUM HEALTHCARE INC.** shall pay all reasonable attorneys' fees, paralegals' fees, costs and expenses incurred in collection by **TCA FUND** pursuant to the Note, **Exhibit 4** at §§ 6(b), 1(c),  and;

D.    Awards  Plaintiff **TCA FUND**  such other and further relief as this Court deems just and proper.

### COUNT II –
### ON GUARANTY AGREEMENT
**(Against Millennium Procomm Solutions Inc., Millennium Coding & Billing Inc.,
Millennium Medical Devices LLC**, **Millennium Vascular Management Group Inc., and
Millennium Vascular Management Group of Staten Island LLC**)

40.    Plaintiff **TCA FUND** realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 27 as if fully set forth herein.

41.    In order to induce **TCA FUND** to extend credit to **MILLENNIUM**, **MILLENNIUM's** wholly owned subsidiaries, **Millennium Procomm Solutions Inc., Millennium Coding & Billing Inc., Millennium Medical Devices LLC**, **Millennium Vascular Management Group Inc., and Millennium Vascular Management Group of Staten Island LLC** (collectively hereafter **"GUARANTOR SUBSIDIARIES"**), on September 20, 2012 executed a Guaranty Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 5** ("Guaranty Agreement"), in which each agreed to "become surety to TCA for the full, prompt and unconditional payment of the Liabilities . . . and the full, prompt and unconditional performance of each term and condition" of **MILLENNIUM** in connection with its transaction with **TCA FUND**. *See* Guaranty Agreement, a copy of which is attached hereto as **Exhibit 5** at 1.

42.    The Guaranty Agreement is a valid and existing contract, and **TCA FUND** performed each and all of its obligations under the Guaranty Agreement and the Note.

13

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

43.     **MILLENNIUM** breached the Note by failing to make the required monthly payments thereunder.  *See* March 21, 2013 Correspondence from TCA FUND, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 8**.   Under the Guaranty Agreement, the **GUARANTOR SUBSIDIARIES** were each and all obligated to make these payments and  satisfy these obligations in the event that **MILLENNIUM** did not.

44.     The **GUARANTOR SUBSIDIARIES** breached their obligations under the Guaranty Agreement by failing to satisfy **MILLENNIUM's** obligations under the Note.

45.     On October 21, 2013, **TCA FUND** notified the  **GUARANTOR SUBSIDIARIES** that it had accelerated and was seeking all amounts due and owing from **MILLENNIUM** at the then outstanding amount of **$420,509.81**.  *See* October 21, 2013 Correspondence from Carl Schoeppl, Esq., a copy of which is attached hereto and incorporated herein by reference as **Exhibit 9**

46.     However, the **GUARANTOR SUBSIDIARIES**  did not, and have not, performed under the Guaranty Agreement by providing full and prompt payment of **MILLENNIUM's** liabilities to **TCA FUND**, and therefore, are in breach of the Guaranty Agreement.

47.     **TCA FUND** has suffered damages as a result of the **GUARANTOR SUBSIDIARIES'** breach of the Guaranty Agreement including, but not limited to, loss of the capital extended to **MILLENNIUM**, as well as loss of the interest it was owed and fees it would have recouped had the **GUARANTOR SUBSIDIARIES** performed according to the terms of the Guaranty Agreement.

48.     Under the Guaranty Agreement, the **GUARANTOR SUBSIDIARIES** are obligated to  pay "all reasonable attorneys' fees and such other reasonable expenses so incurred by" **TCA**

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

**FUND** in connection with the enforcement of its rights to recover upon **MILLENNIUM's**

obligations, including the payment of interest at the default rate.  *Id.* at §§ 8.1.3; 9.4.

      **WHEREFORE**, Plaintiff **TCA FUND** respectfully requests that this Court enter a judgment

in favor of Plaintiff **TCA FUND** and against Defendants **Millennium Procomm Solutions Inc.,**

**Millennium Coding & Billing Inc., Millennium Medical Devices LLC**, **Millennium Vascular**

**Management Group Inc., and Millennium Vascular Management Group of Staten Island LLC**,

and which:

    A.    Orders that Defendants **Millennium Procomm Solutions Inc., Millennium Coding & Billing Inc., Millennium Medical Devices LLC**, **Millennium Vascular Management Group Inc., and Millennium Vascular Management Group of Staten Island LLC** shall pay compensatory damages in an amount of **$420,509.81** in accordance with the proof adduced;

    B.    Orders that Defendants **Millennium Procomm Solutions Inc., Millennium Coding & Billing Inc., Millennium Medical Devices LLC**, **Millennium Vascular Management Group Inc., and Millennium Vascular Management Group of Staten Island LLC** shall pay pre-judgment interest on such compensatory damages at a default rate of interest of 18% pursuant to NEV.REV.STAT. § 99.050 and pursuant to the Note, **Exhibit 4** at §§ 6(b), 1(c), and the Guaranty Agreement, a copy of which is attached hereto as **Exhibit 5** at §§ 8.1.3; 9.4, and post-judgment interest at the highest legal rate under Nevada state law;

    C.    Orders that Defendants **Millennium Procomm Solutions Inc., Millennium Coding & Billing Inc., Millennium Medical Devices LLC**, **Millennium Vascular Management Group Inc., and Millennium Vascular Management Group of Staten Island LLC** shall pay all reasonable fees and expenses incurred by **TCA FUND**, including the reasonable fees of counsel, in connection with the enforcement of **TCA FUND**'s rights pursuant to the Guaranty Agreement, a copy of which is attached hereto as **Exhibit 5** at §§ 8.1.3; 9.4;  and

    D.    Awards  Plaintiff **TCA FUND** such other and further relief as this Court deems just and proper.

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

**COUNT III -**
**FORECLOSURE ON SECURITY**
**(Against All Defendants)**

49.     Plaintiff **TCA FUND** realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 27 as if fully set forth herein.

50.     As security for the payment and performance of its obligations under the Note, a copy of which is attached hereto and incorporated by reference as **Exhibit 4**, **MILLENNIUM HEALTHCARE INC. ("MILLENNIUM")** granted to **TCA FUND** a "continuing, first priority security interest and lien in all of the assets and property of Company [MILLENNIUM] to secure the prompt payment, performance and discharge in full of all of Company's obligations under the Note." *See* Millennium Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 2**, at 1.   Dominick Sartorio executed the document on behalf of **MILLENNIUM** as CEO.

51.     As security for the payment and performance of **MILLENNIUM's** obligations under the Note, a copy of which is attached hereto and incorporated by reference as **Exhibit 4**, **MILLENNIUM's** subsidiaries, **MILLENNIUM PROCOMM SOLUTIONS INC., MILLENNIUM CODING & BILLING INC., MILLENNIUM MEDICAL DEVICES LLC, MILLENNIUM VASCULAR MANAGEMENT GROUP INC., AND MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC**, (collectively **"GUARANTOR SUBSIDIARIES")**, each granted **TCA FUND** a "continuing, first priority security interest and lien in all of the assets and property of Company [MILLENNIUM] to secure the prompt payment, performance and discharge in full of all of Company's obligations under the Note."

16

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

*See* Guarantor Subsidiaries Security Agreement, a copy of which is attached hereto and incorporated

herein by reference as **Exhibit 3** at 1. Dominick Sartorio executed the document on behalf of each

of the subsidiaries.

52.     Specifically, under the terms of the Security Agreements, **MILLENNIUM** and its

**GUARANTOR SUBSIDIARIES** granted **TCA FUND** "an unconditional, continuing, first-priority

security interest in all of the Collateral." *See* Millennium Security Agreement, a copy of which is

attached hereto and incorporated herein by reference as **Exhibit 2**, at § 3(a); Guarantor Subsidiaries

Security Agreement, a copy of which is attached hereto and incorporated herein by reference as

**Exhibit 3** at § 3(a). The Security Agreements each define "Collateral" broadly to include:

> any and all property of each of the Companies, of any kind or description, tangible
> or intangible, real, personal or mixed, wheresoever located and whether now existing
> or hereafter arising or acquired, including the following: (i) all property of, or for the
> account of, each Company now or hereafter coming into the possession, control or
> custody of, or in transit to, Secured Party or any agent or bailee for Secured Party or
> any parent, affiliate or subsidiary of Secured Party or any participant with Secured
> Party in the Obligations (whether for safekeeping, deposit, collection, custody,
> pledge, transmission or otherwise), including all cash, earnings, dividends, interest,
> or other rights in connection therewith and the products and proceeds therefrom,
> including the proceeds of insurance thereon; (ii) the following additional property of
> each Company, whether now existing or hereafter arising or acquired, and wherever
> now or hereafter located, together with all additions and accessions thereto,
> substitutions, betterments and replacements therefor, products and Proceeds
> therefrom, and each Company's books and records and recorded data relating thereto
> (regardless of the medium of recording or storage), together with each Company's full
> right, title and interest in and to all computer software required to utilize, create,
> maintain and process any such records or data on electronic media, including all: (A)
> Accounts, and all goods whose sale, lease or other disposition by each Company has
> given rise to Accounts and have been returned to, or repossessed or stopped in transit
> by, each Company, or rejected or refused by an Account debtor; (B) As-extracted
> Collateral; (C) Chattel Paper (whether tangible or electronic); (D) Commodity
> Accounts; (E) Commodity Contracts; (F) Deposit Accounts, including all cash and
> other property from time to time deposited therein and the monies and property in

the possession or under the control of the Secured Party or any affiliate, representative, agent, designee or correspondent of the Secured Party; (G) Documents; (H) Equipment; (I) Farm Products; (J) Fixtures; (K) General Intangibles (including all Payment Intangibles); (L) Goods. and all accessions thereto and goods with which the Goods are commingled; (M) Health-Care Insurance Receivables; (N) Instruments; (0) Inventory, including raw materials. work-in-process end finished goods; (P) Investment Property; (Q) Letter-of-Credit Rights; (R) Promissory Notes; (S) Software; (T) all Supporting Obligations: (U) all commercial tort claims hereafter arising; (V) all other tangible and intangible personal property of each Company (whether or not subject to the Code), including. all bank and other accounts and all cash and all investments therein, all proceeds, products, offspring, accessions, rents, profits, income, benefits, substitutions and replacements of and to any of the property of each Company described within the definition of Collateral (including, any proceeds of insurance thereon and all causes of action. claims and warranties now or hereafter held by each Company in respect of any of the items listed within the definition of Collateral). and all books, correspondence, files and other Records. including, all tapes, desks, cards, Software, data and computer programs in the possession or under the control of each Company or any other Person from time to time acting for each Company, in each case, to the extent of each Company's rights therein, that at any time evidence or contain information relating to any of the property described or listed within the definition of Collateral or which are otherwise necessary or helpful in the collection or realization thereof; (W} real estate property owned by each Company, leasehold interests owned by each Company in real property and the interest of each Company in fixtures or any other assets or property related to such real property or leasehold interests; and (X) Proceeds. including all Cash Proceeds and Noncash Proceeds, and products of any or all of the foregoing, in each case howsoever each Company's interest therein may arise or appear (whether by ownership, security interest, claim or otherwise.)

*See* Millennium Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 2**, at § 2(f); Guarantor Subsidiaries Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 3** at § 2(f).

53.     Upon an event of default, the Security Agreement gives **TCA FUND** the right to:

"at any and all times to enforce the Company's rights against all Persons obligated on any of the Collateral, including the right to: (i) notify and/or require the Company to notify any or all Persons obligated on any of the Collateral to make payments directly to Secured Party or in care of a post office lock box under the sole control of Secured

Party established at Company's expense, and to take any or all action with respect to Collateral as Secured Party shall determine in its sole discretion, including, the right to demand, collect, sue for and receive any money or property at any time due, payable or receivable on account thereof, compromise and settle with any Person liable thereon, and extend the time of payment or otherwise change the terms thereof, without incurring any liability or responsibility to the Company whatsoever; and/or (ii) require the Company to segregate and hold in trust for Secured Party and, on the day of Company's receipt thereof, transmit to Secured Party in the exact form received by the Company (except for such assignments and endorsements as may be required by Secured Party), all cash, checks, drafts, money orders and other items of payment constituting any portion of the Collateral or proceeds of the Collateral."

*See* Millennium Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 2**, at § 3(c); Guarantor Subsidiaries Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 3** at § 3(c).

54.     Further, upon an event of default, the Security Agreements gives **TCA FUND** the right to:

(i)     Take absolute control of the Collateral including transferring into the Secured Party's name or into the name of its nominee or nominees (to the extent the Secured Party has not theretofore done so) and thereafter receive, for the benefit of the Secured Party, all payments made thereon, give all consents, waivers and ratifications in respect thereof and otherwise act with respect thereto as though it were the outright owner thereof . . . .

(iv)    Operate, manage and control the Collateral (including use of the Collateral and any other property or assets of Company in order to continue or complete performance of Company's obligations under any contracts of Company), or permit the Collateral or any portion thereof to remain idle or store the same, and collect all rents and revenues therefrom.

(v)     Enforce the Company's rights against any Persons obligated upon any of the Collateral.

*See* Millennium Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 2**, at § 5; Guarantor Subsidiaries Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 3** at § 5.

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

55.    **TCA FUND** perfected its interest in the property and assets through the filing of a UCC-1 financing statement with the State of Delaware under filing No. 2012 3677681,  a copy of which is attached hereto and incorporated herein by reference as **Exhibit 6**, and with the State of New York under filing No. 201209250545455,  a copy of which is attached hereto and incorporated herein by reference as **Exhibit 7**.

56.    A UCC search has disclosed that there are no other secured interests of higher priority filed against the property and assets of **MILLENNIUM** or its **GUARANTOR SUBSIDIARIES** such that **TCA FUND** holds a first-priority security interest in the existing or future assets of **MILLENNIUM** and its **GUARANTOR SUBSIDIARIES**.

57.    **TCA FUND** owns and holds the Securities Purchase Agreement, Note, and the Security Agreements, a copy of which is attached hereto as **Exhibits 1 - 4**.   Defendants **MILLENNIUM** and its **GUARANTOR SUBSIDIARIES** hold possession of the security pledged in the Security Agreements.

58.    Defendant **MILLENNIUM** has defaulted under the terms of the Note by failing to make two required monthly payments and failing to pay all sums due upon demand.  *See* Note, **Exhibit 4** at § 6(a) (defining Event of Default to include failure "to pay any installment of interest principal or other sums due under this Note or any other Transaction Document within three (3) Business Days of when any such payment shall be due and payable.)

59.    **MILLENNIUM's** failure to pay constituted a breach of its obligations under the Millennium Security Agreement.  *See*  Millennium Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 2**, at § 4(a) (defining Event of Default to

20

include failure "failure of Company to pay any sum due under or as part of the Obligations as and when due and payable (whether by acceleration, declaration, extension or otherwise.")

60.     The **GUARANTOR SUBSIDIARIES** failed to abide by the terms of their Guaranty Agreement and satisfy **MILLENNIUM's** obligations to TCA Fund, thereby breaching that Agreement. *See* Guaranty Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 5**, at § 7.1.   **MILLENNIUM's** failure to pay its original obligation, and the **GUARANTOR SUBSIDIARIES'** failure to pay under the terms of the Guaranty, triggered a default of the Guarantor Subsidiaries Security Agreement, a copy of which is attached hereto and incorporated herein by reference as **Exhibit 3** at § 4(a).

**WHEREFORE**, Plaintiff **TCA FUND** respectfully requests that this Court enter a judgment in favor of Plaintiff **TCA FUND** and against Defendants **MILLENNIUM HEALTHCARE INC. and MILLENNIUM PROCOMM SOLUTIONS INC., MILLENNIUM CODING & BILLING INC., MILLENNIUM MEDICAL DEVICES LLC**, **MILLENNIUM VASCULAR MANAGEMENT GROUP INC., AND MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC**, and enter an Order:

A.      Foreclosing the Millennium Security Agreement and the Guarantor Subsidiaries Security Agreement, and if the proceeds of the sale are insufficient to pay **TCA FUND's** claim in full, granting **TCA FUND** a deficiency judgment as it is entitled pursuant to section 8(b) of the Security Agreements;

B.      Ordering Defendants **MILLENNIUM HEALTHCARE INC.** and **MILLENNIUM PROCOMM SOLUTIONS INC., MILLENNIUM CODING & BILLING INC., MILLENNIUM MEDICAL DEVICES LLC**, **MILLENNIUM VASCULAR MANAGEMENT GROUP INC., AND MILLENNIUM VASCULAR MANAGEMENT GROUP OF STATEN ISLAND LLC**, to pay all reasonable fees and expenses incurred by **TCA FUND**, including the reasonable fees of counsel, in connection with the enforcement of **TCA FUND**'s rights as it is entitled pursuant to

*TCA Global Credit Master Fund, L.P., v. Millennium Healthcare Inc., et al.,*
**Complaint for Monetary Damages and Other Relief**

section 8(b) of the Security Agreements;  and

C.      Awarding  Plaintiff **TCA FUND**  such other and further relief as this Court deems just and proper.

Dated: December 13, 2013                           Respectfully submitted,
Boca Raton, Florida

                                                   **s/ Carl F. Schoeppl, Esq.**
                                                   Carl F. Schoeppl,
                                                   Florida Bar No. 818518
                                                   Terry A. C. Gray
                                                   Florida Bar No. 100732
                                                   *Counsel for Plaintiff TCA*
                                                       *Global Credit Master Fund, L.P.*
                                                   **SCHOEPPL & BURKE, P.A.**
                                                   4651 North Federal Highway
                                                   Boca Raton, Florida 33431
                                                   Telephone: (561) 394-8301
                                                   Facsimile: (561) 394-3121
                                                   E-mail: carl@schoepplburke.com
                                                   E-mail: tgray@schoepplburke.com

F:\TCA - Millennium\Pleadings\Complaint 12 13 13 FINAL.wpd